UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNY CALIHAN, | CASE NO.   1:09-CV-1373-MJS (PC) |
| Plaintiff, | COMPLAINT DISMISSED WITH LEAVE TO AMEND |
| v. | (ECF No.  1) |
| WARDEN D. ADAMS, et al., | AMENDED COMPLAINT DUE WITHIN THIRTY DAYS |
| Defendants. | |

**SCREENING ORDER**

**I.     PROCEDURAL HISTORY**

Plaintiff Kenny Calihan ("Plaintiff"), a state prisoner in the custody of the California Department of Corrections and Rehabilitation, is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the action on August 6, 2009; he consented to Magistrate Judge jurisdiction August 14, 2009.  (ECF Nos. 1 & 5.)  Plaintiff's Complaint is now before the Court for screening.

For the reason set forth below, the Court finds that Plaintiff's Complaint fails to state

1

a claim upon which relief may be granted.

## II. SCREENING REQUIREMENTS

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 129 S.Ct. at 1949.

## III. SUMMARY OF COMPLAINT

Plaintiff, currently incarcerated at Corcoran State Prison, brings this action for violation of his First Amendment right to send and receive mail. He claims an ongoing

problem since sometime in 2008. Plaintiff names the following individuals as Defendants: Mr. D. Adams, Warden at Corcoran State Prison; Mr. B. Silva, Mail Room Supervisor; Sgt. A. Morrison, Sergeant, 4A-Facility; and Captain R. Flores, Captain Investigation Service Unit. Plaintiff also named Officer Angie Covert, Investigation Service Unit and Officer Mr. R. G. Castro, Investigation Service Unit, as Defendants in his Complaint, but has since withdrawn their names from this action. (ECF No. 27.)

Plaintiff alleges as follows: Plaintiff's incoming and outgoing mail has been interfered with and photographs have been confiscated by Defendants Silva, Morrison, and Flores. The confiscated property included personal photographs of Charles Manson. Plaintiff spoke with Defendant Morrison and told him the interference and confiscations were a violation of federal law and prison mail policies. Defendant Morrison claimed that prison staff, including the ISU, could confiscate mail without notice. Plaintiff asserted his claims through the prison appeal process on December 17, 2008. Since then, under the direction of the Warden, Defendants have held, flagged, and delayed Plaintiff's incoming and outgoing mail. Defendant Silva took all of Plaintiff's mail from the mail room to ISU. ISU was under the supervision of Defendant Flores. Defendant Covert looked through Plaintiff's mail for items depicting Charles Manson; her investigation was inconclusive. Defendant Castro then continued the investigation and has held, flagged, sat-on, and restricted Plaintiff's mail.

## IV. ANALYSIS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured

3

>by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." <u>Sweaney v. Ada County, Idaho</u>, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).

Plaintiff claims that his First Amendment right to send and receive mail is being violated. The Court infers that Plaintiff is also claiming a Fourth Amendment violation in alleging that prison officials are wrongfully searching his mail and seizing photographs. Although not specifically stated, Plaintiff also appears to be asserting a due process claim based on Defendants' failure to provide him notice of the mail interference and confiscations. Plaintiff also claims that his due process rights were violated by the confiscation of his personal property. Finally, it appears that he is alleging retaliation for having pursued his constitutional rights. Plaintiff requests monetary compensation and injunctive relief. Each claim will be addressed below.

### A.     First Amendment Claim

Plaintiff claims his First Amendment right to send and receive mail is being violated. Prisoners have "a First Amendment right to send and receive mail." <u>Witherow v. Paff</u>, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). However, there must be a "delicate balance" between prisoners' First Amendment rights and the discretion given to prison administrators to govern the order and security of the prison. <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 407-408 (1989). Prison officials have more leeway to regulate incoming than outgoing mail because of the greater security risks inherent in materials coming into a prison. <u>Id.</u> at 413.

4

1.     Incoming Mail

As stated above, prisoners enjoy a First Amendment right to send and receive mail. Witherow, 52 F.3d at 265 (citing Thornburgh, 490 U.S. at 407). A prison, however, may adopt regulations or practices which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). The Turner standard applies to regulations and practices concerning all correspondence between prisoners and to regulations concerning incoming mail received by prisoners from non-prisoners. Thornburgh, 490 U.S. at 413.

Prison officials have a responsibility to forward mail to inmates promptly. Bryan v. Werner, 516 F.2d 233, 238 (3d Cir. 1975). Allegations that mail delivery was delayed for an inordinate amount of time are sufficient to state a claim for violation of the First Amendment. Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996). However, a temporary delay or isolated incident of delay does not violate a prisoner's First Amendment rights. Crofton v. Roe, 170 F.3d 957, 961 (9th Cir. 1999) (policy of diverting publications through property room reasonably related to prison's interest in inspecting mail for contraband).

In this case, Plaintiff alleges regular, ongoing delays of between twenty-one and thirty-five day delays in receiving his incoming mail. The Court finds that such an alleged delay not shown to be reasonably related to a legitimate prison goal is sufficiently long to substantially burden Plaintiff's First Amendment rights and chill his exercise of free speech. Thus, under the First Amendment right to freedom of speech, the Court finds that Plaintiff has stated a claim upon which relief may be granted.

However, Plaintiff fails to attribute this action to a named Defendant. His Complaint

5

states that Defendant Silva supervises the mail room and that Defendant Flores supervises the ISU, but does not allege that either of these two Defendants personally interfered with his mail. Thus, Plaintiff must amend and include facts attributing the delay in processing his mail to a particular Defendant.

Moreover, Plaintiff's allegations that Defendants are violating "federal law" and "prison mail policies" by interfering with his mail do not state a claim. To state a claim, Plaintiff must allege that the prison policy violates his constitutional rights. Violation of a prison policy is insufficient. See Tatum v. Harmon, 2010 WL 4813610, *1 (8th Cir. Nov. 29, 2010) (an allegation that a defendant violated a prison policy is not sufficient to state a constitutional claim) (citing Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997) (no Section 1983 liability for violation of prison policy)).

### 2. Outgoing Mail

With respect to outgoing correspondence from prisoners to non-prisoners, an exception to the Turner standard applies. Because outgoing correspondence from prisoners does not, by its very nature, pose a serious threat to internal prison order and security, there must be a closer fit between any regulation or practice affecting such correspondence and the purpose it purports to serve. Thornburgh, 490 U.S. at 411-12. Censorship of outgoing prisoner mail is justified if the following criteria are met: (1) the regulation furthers "an important or substantial government interest unrelated to the suppression of expression" and (2) "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." Procunier, 416 U.S. at 413, overturned on other grounds by Thornburgh, 490 U.S. at 413-14.

Plaintiff alleges that his outgoing mail is intercepted and held.  He does not specify the length of delay or state that it is never delivered.  He fails to allege that he was actually prohibited from exercising his First Amendment rights or that the interception and delay of his outgoing mail was greater than necessary to protect the governmental interest in order and security of a prison.  Accordingly, Plaintiff has failed to demonstrate that the interception and delay of his outgoing mail "constitute[s] a violation of a constitutionally protected liberty interest." Denton v. Bowman, 2008 WL 755798, *1 (S.D. Cal. March 19, 2008). Plaintiff also fails to attribute this action to a named Defendant.

The Court grants Plaintiff leave to amend his Complaint and plead sufficient facts to state a claim.

**B.     Fourth Amendment Claim**

As noted, though not clearly stated, it appears Plaintiff also is alleging a Fourth Amendment violation based on Defendants Silva, Morrison, and Flores opening and inspecting his mail and confiscating photographs.  The Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.'" U.S. v. Jacobsen, 466 U.S. 109, 113-114 (1984).

   1.     Search

Prisoners have very limited Fourth Amendment rights while incarcerated. United States v. Vallez, 653 F.2d 403, 406 (9th Cir. 1981).  Prison officials are generally entitled to monitor outgoing nonprivileged, non-legal mail. See Stroud v. United States, 251 U.S. 15, 21-22 (1919) (interception of inmate's mail does not violate the Fourth Amendment); Smith v. Shimp, 562 F.2d 423, 425 (7th Cir. 1977) (interest of state in monitoring nonprivileged correspondence justifies minor burdens placed on freedom to communicate

7

with friends and relatives); United States v. Kelton, 791 F.2d 101, 102-103 (8th Cir. 1986) (rejecting contention that regulations authorizing prison officials to read and copy non-privileged mail violate inmate's Fourth Amendment rights); Yancey v. Jenkins, 638 F.Supp. 340, 341 (N.D. Ill. 1986) ("It is settled law that prisoners have no legitimate expectation of privacy in their [nonprivileged] correspondence"); Murphy v. Morris, 849 F.2d 1101, 1104-05 (8th Cir. 1988).

Because Plaintiff does not allege that Defendants monitored any legal mail or otherwise privileged mail, he has failed to state a Fourth Amendment claim. The Court grants Plaintiff leave to amend this claim.

    2.    Seizure

Under the Fourth Amendment a seizure of property "occurs when there is some meaningful interference with an individual's possessory interest in that property." Jacobsen, 466 U.S. at 113. The United States Supreme Court has held that "the Fourth Amendment has no applicability to a prison cell." Hudson v. Palmer, 468 U.S. 517, 536 (1984). Further, the Court noted, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." Id. at 528 n. 8.

Because there is no Fourth Amendment applicability in a prison cell, any claim raised by Plaintiff in this regard fails.

**C.    Due Process Claims**

Plaintiff asserts two separate due process claims: (1) that photographs of Charles Manson were wrongfully seized from his mail; and (2) that he failed to receive notice that his mail was being seized. Whether an item was properly withheld is "completely separate from the question of whether . . . such withholding complied with the requisite procedural

safeguards." Sorrels v. McKee, 290 F.3d 965, 972 (9th Cir. 2002). Thus, the Court will address each due process violation separately below.

### 1. Seizure of items from the mail

Plaintiff alleges that photographs of Charles Manson were wrongfully confiscated from his mail by Defendants Silva, Morrison, and Flores.

The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff, 418 U.S. at 556, and prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n. 13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)), "[a]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984).

Plaintiff claims that photographs of Charles Manson were confiscated. He provides no details as to whether they were taken pursuant to a prison policy or whether it was the act of individual employees. Thus, Plaintiff has failed to allege sufficient facts to allow the Court to determine whether he has stated a claim. The Court will grant Plaintiff leave to amend his complaint on this claim. See Hall v. Lewis, 57 F.3d 1977 (9th Cir. 1995) (prisoner given leave to amend claim to allege whether property was taken pursuant to prison policy).

### 2. Notice that mail was seized

Plaintiff claims that his due process rights were violated when the prison officials

failed to give him notice of their interference and confiscation of his mail.

"[W]ithhold[ing] delivery of [inmate mail] must be accompanied by minimum procedural safeguards." Procunier, 416 U.S. at 417-18, overruled on other grounds by Thornburgh, 490 U.S. at 413-14.  Specifically, an inmate "has a Fourteenth Amendment due process liberty interest in receiving notice that his incoming mail is being withheld by prison authorities." Frost v. Symington, 197 F.3d 348, 353-54 (9th Cir. 1999).  This liberty interest is protected from "arbitrary government invasion," and any decision to censor or withhold delivery of mail must be accompanied by "minimum procedural safeguards." Sikorski v. Whorton, 631 F.Supp.2d 1327, 1341 (D. Nev. 2009) (quoting Procunier, 416 U.S. at 417-18.)  The "minimum procedural safeguards" are: (1) notifying the inmate that the mail was seized; (2) allowing the inmate a reasonable opportunity to protest the decision; and (3) referring any complaints to a prison official other than the one who seized the mail. Procunier, 416 U.S. at 418-19; Krug v. Lutz, 329 F.3d 692, 698 (9th Cir. 2003).

Plaintiff alleges up to a thirty-five day delay in receiving his incoming mail.  He makes no such specific time claim as to his outgoing mail.  While a brief delay in the processing of inmate's mail without notice to the inmate is not a violation of the Fourteenth Amendment, Sorrels v. McKee, 290 F.3d at 972; Frost, 197 F.3d at 353, the delay alleged by Plaintiff here is not brief.

Plaintiff alleges that he was told that the prison officials did not need to provide him notice of the confiscation and/or delay of his mail.  There is a due process violation "[o]nly if the failure to provide notice was pursuant to prison policy," mere negligence on the part of prison officials is not actionable as a due process violation. Sorrels, 290 F.3d at 972. Plaintiff has failed to allege that the lack of notice was pursuant to a prison policy.  However,

10

insofar as Plaintiff alleges repeated and continuously occurring delays, he implicitly alleges something more than mere negligence.

Therefore, the Court finds that Plaintiff has stated a cognizable claim under the Fourteenth Amendment. Because Plaintiff fails to attribute these actions to a named Defendant, however, he has failed to state a claim as to any particular Defendant in this case. His Complaint states that when asked by Plaintiff if notice was required, Defendant Morrison replied that it was not. When Plaintiff pressed that it was required and that he had not received any, Defendant Morrison told Plaintiff again that it was not required and that prison staff and ISU could confiscate mail without notice. Plaintiff does not claim that Defendant Morrison had anything to do with giving and receiving notice. In fact, it appears that Defendant Morrison was Plaintiff's housing supervisor and, therefore, had nothing to do with the delay in processing his mail. Thus, the Court will give Plaintiff leave to amend and name a Defendant who actually participated in the failure to notify Plaintiff of the diversion of his mail.

### D.     Retaliation Claim

Similarly, it is not entirely clear in Plaintiff's Complaint, but it appears that Plaintiff is making a claim that Defendants are retaliating against him for pursuing his constitutional rights, i.e., that Defendant Adams directed continued interference with his mail after Plaintiff he filed a grievance for interference with his mail,.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

11

advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff describes the adverse action as the extreme delay of his mail. That satisfies the first prong. Filing a grievance is a protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). Thus, Plaintiff has also satisfied the third prong.

The second element of a prisoner retaliation claim focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Morgan, 874 F.2d at 1314). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

In relation to the second prong, Plaintiff states that after he started the original grievance and appeal process in December 2008, his mail has been interfered with. It is unclear why Plaintiff believes that the grievance was the cause of his mail being delayed when the same or similar interference was occurring before the grievance was filed; indeed, it was the subject of the grievance. Plaintiff has failed to establish causation and motive sufficient to satisfy the second prong of his retaliation claim.

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape

12

liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300). Plaintiff has satisfied the fourth prong, as delays of up to thirty-five days would chill a person of ordinary firmness from future First Amendment activities.

With respect to the fifth prong, a prisoner must affirmatively allege that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532. Though this is not a high burden, see id. (prisoner's allegations that search was arbitrary and capricious sufficient to satisfy this inquiry), Plaintiff has failed to allege any facts regarding whether the delays advanced a legitimate penological goal. Absent an allegation that the reason for the delays in receiving mail did not advance a legitimate penological interest, Plaintiff cannot satisfy the fifth prong of a retaliation claim.

Because Plaintiff has failed to allege sufficient facts to satisfy all five prongs of his retaliation claim, the Court finds that he has failed to state a claim upon which relief could be granted. The Court will give Plaintiff leave to amend and cure the deficiencies noted herein.

### E.  **Personal Participation and Supervisory Liability**

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). The Supreme Court has emphasized that the term "supervisory liability," loosely and

13

commonly used by both courts and litigants alike, is a misnomer. Iqbal, 129 S.Ct. at 1949. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Id. at 1948. Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Id. at 1948-49.

When examining the issue of supervisor liability, it is clear that the supervisors are not subject to vicarious liability, but are liable only for their own conduct. Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001); Wesley v. Davis, 333 F.Supp.2d 888, 892 (C.D.Cal. 2004). In order to establish liability against a supervisor, a plaintiff must allege facts demonstrating (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Jeffers, 267 F.3d at 915; Wesley, 333 F.Supp.2d at 892. The sufficient causal connection may be shown by evidence that the supervisor implemented a policy so deficient that the policy itself is a repudiation of constitutional rights. Wesley, 333 F.Supp.2d at 892 (internal quotations omitted). However, an individual's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement. Id. (internal quotations omitted).

Supervisor liability under section 1983 is a form of direct liability. Munoz v. Kolender, 208 F.Supp.2d 1125, 1149 (S.D.Cal. 2002). Under direct liability, Plaintiff must show that Defendant breached a duty to him which was the proximate cause of his injury. Id. "'The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the

constitutional injury.'" Id. (quoting Johnson v. Duffy, 588 F.2d 740, 743-744 (9th Cir. 1978)).

In this action, Plaintiff has not alleged facts demonstrating which Defendants personally acted to violate his rights, other than stating that Defendants Silva, Morrison, and Flores confiscated property. Plaintiff needs to specifically link each Defendant to a violation of his rights. Plaintiff shall be given the opportunity to file an amended complaint curing the deficiencies in this respect.

### F.     Injunctive Relief

Plaintiff requests the Court direct Defendants to comply with the mail policies, not to hold, flag, or restrict Plaintiff's mail—incoming or outgoing—and to issue Plaintiff's mail within the time limits proscribed (seven days) in the mail policies. This appears to be a request for a preliminary injunction.

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter v. Natural Res. Def. Council, Inc., 129 U.S. 365, 375 (2008)). The principal purpose of preliminary injunctive relief is to preserve the Court's power to render a meaningful decision after a trial on the merits. See C. Wright & A. Miller, 11 Federal Practice and Procedure, § 2947 (1973). Significantly, in cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

Plaintiff has not met the legal standard required for the Court to grant him an injunction. He has not demonstrated, or even alleged, that he will suffer irreparable harm in the absence of an injunction. Thus, this request is denied.

## V.    CONCLUSION AND ORDER

The Court finds that Plaintiff's Complaint fails to state any claims upon which relief may be granted under section 1983 against any of the named Defendants. Having notified Plaintiff of the deficiencies in his Complaint, the Court will provide Plaintiff with time to file an amended complaint to address these deficiencies. See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

In his amended complaint, Plaintiff must demonstrate how the conditions complained of resulted in a deprivation of his constitutional rights. Iqbal, 129 S.Ct. at 1948-49. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 1949 (quoting Twombly, 550 U.S. at 555). Plaintiff must also demonstrate that each defendant personally participated in the deprivation of his rights. Jones, 297 F.3d at 934.

Plaintiff should note that although he has been given the opportunity to amend his complaint, it is not for the purpose of adding new claims or defendants, unless specified herein. Plaintiff should focus the amended complaint on claims and defendants relating only to issues arising out of the interference with his mail beginning in 2008.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each

claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed for failure to state a claim, with leave to file an amended complaint within thirty (30) days from the date of service of this order;

2. Plaintiff has voluntarily dismissed Defendant Angie Covert and Defendant R. G. Castro. (ECF No. 27.) Thus, their names shall be removed from the caption;

3. Plaintiff's request for injunctive relief is denied;

4. Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:09-cv-1373-MJS (PC); and

5. If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated:   January 25, 2011          /s/ *Michael J. Seng*
ci4d6                               UNITED STATES MAGISTRATE JUDGE